# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2024-1531
LT Case No. 2024-CA-000203-A

_____

JOHN T. WILLIAMS,

    Appellant,

    v.

ALFRED COOK, derivatively on
behalf of ADVANCED
ORTHOPEDICS, P.A.,

    Appellee.

_____


On appeal from the Circuit Court for Sumter County.
Michelle T. Morley, Judge.

Phillip S. Smith and Daniel J. Kersey, of McLin Burnsed, P.A.,
Leesburg, for Appellant.

Scottie N. McPherson and Mariah A. Manley, of Byrd Campbell,
P.A., Winter Park, for Appellee.

March 7, 2025


MACIVER, J.

    Appellant John T. Williams ("Williams") appeals the trial
court's issuance of a temporary injunction order in favor of
Appellee Alfred Cook ("Cook"), derivatively on behalf of Advanced
Orthopedics, P.A. ("AOI"). The temporary injunction order

prohibited Williams from doing business with patients of or operating under the name of AOI. We have jurisdiction. *See* Art. V, § 4(b)(1), Fla. Const.; Fla. R. App. P. 9.130(a)(3)(B).

On appeal, Williams contends that the order was legally insufficient because it did not contain sufficient factual findings and did not require a bond; that the trial court failed to consider his counterclaim and affirmative defenses; that Cook failed to establish the requisite elements for an injunction; and that the order failed to maintain the status quo.

We agree with Williams that the order is legally insufficient because it did not contain sufficient factual findings or require a bond and reverse and remand on that issue.

I.

AOI was formed by Williams and Alfred Cook ("Cook"), both orthopedic surgeons, in 2015. Williams and Cook were equal shareholders and the sole directors of the company. For eight years, AOI operated out of one office in The Villages.

Williams and Cook founded a second company together, Bone Doctors, LLC, to serve as a holding company to purchase land and build a new building for AOI. They agreed to deposit approximately $260,000.00 from AOI into the Bone Doctors savings account. In July 2023, Cook discovered that Williams had unilaterally and without notice removed $135,177.00 from the Bone Doctors, LLC account.

In April 2024, Williams used the money he had withdrawn from Bone Doctors to acquire commercial space to operate his portion of the AOI practice without Cook in a new office, a block and a half away from the original office. Several employees chose to follow Williams to this second location, and Williams brought office furniture, medical equipment, and controlled substances—authorized by the DEA to be administered at the primary office only—to the new location. Williams did not inform Cook that he had moved; Cook learned of the decision when an employee forwarded to him an internal email from Williams's nurse practitioner to all AOI employees except him, which announced

2

that "AOI is growing! Dr. Williams and Megan will be operating out of a second office effective May 6. For any questions or inquiries please see Dr. Williams or myself."

A week later, Cook filed a complaint against Williams, alleging breach of fiduciary duty, injunction, breach of contract, and usurpation of business opportunity. He also filed an emergency motion for a temporary injunction.

Williams answered the complaint, raising six affirmative defenses, and counterclaimed against Cook alleging breach of fiduciary duty and seeking judicial dissolution of AOI. In response to Williams's counterclaim for dissolution, Cook filed a notice of election to purchase Williams's shares.

An evidentiary hearing was held on May 7, 2024, at which both parties testified and presented evidence. Neither party addressed the affirmative defenses raised by Williams. In closing arguments, Cook's attorney requested a nominal bond or no bond, but Williams's attorney did not address the issue of a bond.

The trial court's written order entered May 16, 2024, granted the injunction and enjoined Williams from doing business or seeing patients under AOI; billing under AOI's name or identification number(s) for services rendered to any patient; and accessing or utilizing AOI's electronic medical records.

Further, Williams was required to return all items that he had removed from AOI. The parties were ordered to maintain bank accounts for the deposit of past and future revenues of AOI. Williams was to have no access to those bank accounts and Cook was to provide Williams with copies of bank statements and a monthly accounting. Revenues generated by the parties subsequent to the hearing were to be their sole and separate income. The order provided that no evidence was presented on the need or amount of a bond to be posted to protect Williams from wrongful entry of the injunction, and no bond was required.

This appeal followed.

3

II.

We employ a hybrid standard to review trial court orders on requests for temporary injunctions. To the extent the trial court's order is based on factual findings, it will not be reversed unless the trial court abused its discretion; however, any legal conclusions are reviewed de novo. *Housman v. Housman*, 370 So. 3d 1006, 1009 (Fla. 5th DCA 2023) (quoting *Gainesville Woman Care, LLC v. State*, 210 So. 3d 1243, 1258 (Fla. 2017)).

For a temporary injunction to be granted, the moving party must establish (1) the likelihood of irreparable harm; (2) the lack of an adequate remedy at law; (3) a substantial likelihood of success on the merits; and (4) considerations of the public interest. *Dickerson v. Senior Home Care, Inc.*, 181 So. 3d 1228, 1229 (Fla. 5th DCA 2015) (citing *Yardley v. Albu*, 826 So. 2d 467, 470 (Fla. 5th DCA 2002)).

If the four criteria are met, the court must make clear and sufficient factual findings in the order granting the injunction to support each of the four elements. *Id.* (citing Florida Rule of Civil Procedure 1.610[1]); *see also Housman*, 370 So. 3d at 1009. "[R]eciting legal aphorisms or parroting the essential criteria of a temporary injunction and proclaiming that they have been established . . . will not suffice." *Yardley*, 826 So. 2d at 470. Because entry of a temporary injunction is an extraordinary remedy, strict compliance with the provisions of rule 1.610 is required. "A temporary injunction order cannot be sustained if the order fails to set forth sufficient factual findings to support the trial court's rulings." *Fla. Water Srvs. Corp. v. Blue Stone Real Est. Const.*, 747 So. 2d 406, 409 (Fla. 5th DCA 1999).

Injunctions require a bond. Florida Rule of Civil Procedure 1.610(b) provides that "[n]o temporary injunction shall be entered unless a bond is given by the movant in an amount the court deems

---

[1] Rule 1.610 requires that the trial court's order "specify the reasons for entry [and] describe in reasonable detail the act or acts restrained without reference to a pleading or another document." Fla. R. Civ. P. 1.610(c).

proper, conditioned for the payment of costs and damages sustained by the adverse party if the adverse party is wrongfully enjoined." The plain language of the rule is compulsory; while a trial court is afforded discretion in setting the amount of the bond, it can neither waive the bond requirement nor set only a nominal amount. *Housman*, 370 So. 3d at 1009; *Wayne's Aggregate & Materials, LLC v. Lopez*, 391 So. 3d 633, 636 (Fla. 5th DCA 2024). There are two exceptions where a bond can be waived: (1) when an injunction is issued on the pleading of a "municipality or the state or any officer, agency, or political subdivision thereof," or (2) when a temporary injunction is "issued solely to prevent physical injury or abuse of a natural person." Fla. R. Civ. P. 1.610(b).

However, a trial court's failure to set a bond does not invalidate the temporary injunction on its own; instead, an evidentiary hearing must be held to determine the amount of the bond to be posted. *Housman*, 370 So. 3d at 1009 (citing *Graham v. Battey*, 347 So. 3d 515, 522 (Fla. 5th DCA 2022)); *see also Graham*, 347 So. 3d at 522 ("[T]he lack of a bond does not invalidate the injunction . . . [but] we remand this matter for the trial court to conduct an evidentiary hearing regarding the appropriate amount of bond Appellee must post.") (citing *Ralicki v. 998 SW 144 Ct. Rd, LLC*, 254 So. 3d 1155, 1157 (Fla. 5th DCA 2018)).

Here, the temporary injunction order fails to comply with rule 1.610 in two ways. First, the order fails to set forth sufficient factual findings as to each of the four elements Cook was required to prove for issuance of the temporary injunction. *See Wayne's Aggregate,* 391 So. 3d at 636; *Housman*, 370 So. 3d at 1009. Second, the order fails to set a bond.

The proper remedy is to remand this case to the trial court for further consideration. *See Wayne's Aggregate*, 391 So. 3d at 637 (citing *Yardley*, 826 So. 2d at 470); *Berk-Fialkoff v. Wilmington Trust, Nat'l Ass'n*, 358 So. 3d 472, 476 (Fla. 5th DCA 2023) (reversing entry of injunction and remanding for the trial court "to make the appropriate findings as to the four elements necessary for entry of an injunction"); *Housman*, 370 So. 3d at 1009 ("[A] trial court's failure to set a bond does not invalidate the temporary injunction on its own. Instead, the remedy for the trial court's failure to set a bond as required by rule 1.610(b) is that the trial

court must conduct an evidentiary hearing to determine the amount of the bond to be posted.").

III.

Williams also argues that the order fails to maintain the status quo. We disagree.

The primary purpose of an injunction is to preserve the status quo, which is "the last, actual, peaceable, noncontested condition which preceded the pending controversy." *Nazia, Inc. v. Amscot Corp.,* 275 So. 3d 702, 705 (Fla. 5th DCA 2019) (quoting *Chicago Title Ins. Agency of Lee Cnty, Inc. v. Chicago Title Ins. Co.,* 560 So. 2d 296, 297 (Fla. 2d DCA 1990)). Preservation of the status quo does not "permit a wrongdoer to shelter himself behind a suddenly and secretly changed status." *See Bowling v. Nat'l Convoy & Trucking Co.,* 135 So. 541 (Fla. 1931). But in certain circumstances, courts have allowed an injunction to alter the status quo, such as when maintaining the status quo would allow a continuing trespass. *Annex Indus. Park, LLC v. Corner Land, LLC*, 206 So. 3d 739, 741 (Fla. 3d DCA 2016).

Here, Williams first upset the status quo by his actions in unilaterally opening the second location. He "suddenly and secretly" changed the status quo, and this new status quo is not entitled to be preserved. *Bowling*, 135 So. at 544. He then filed a notice of dissolution, which would have disturbed the status quo further. He acknowledged that he did not expect Cook to allow him to operate the business, since Cook is buying the business.

The trial court restored the status quo as much as possible without creating further harm. It protected Cook from Williams's alleged misuse of property and funds, by permitting Cook to operate the business and control the funds, subject to providing Williams with copies of bank statements and a full accounting each month. Williams was not prohibited from seeing clients or earning money, just from using the AOI name. Williams's ability to earn a living was not impaired. The trial court's requirement that revenues derived from services rendered prior to the hearing date be deposited into an existing AOI account and that future revenues of each party be their sole and separate income is supported by

6

competent, substantial evidence, and there is no basis for holding that the trial court abused its discretion in this regard.

## IV.

Accordingly, we reverse the trial court's temporary injunction order and remand this case to the trial court for further proceedings.

If the trial court determines Cook has established all four elements warranting issuance of the temporary injunction, the trial court shall enter a written order consistent with this opinion sufficiently setting forth its factual findings as to each of the four elements. On remand, the trial court should also consider Williams's affirmative defenses to Cook's motion for temporary injunction.

If the trial court can comply with these requirements, then it must set a bond in accordance with rule 1.610(b) and conduct a hearing to determine the amount of the bond to be posted. But if the trial court is unable to provide sufficient factual findings to support all four of the requisite elements for a temporary injunction, then it must enter an order denying the motion.

REVERSED and REMANDED for further proceedings consistent with this opinion.

LAMBERT and HARRIS, JJ., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

7